Harper, J.
The point for consideration is the settlement by the deed of the 14th March, 1819. If the application had been made recently after its execution, I should greatly doubt whether that settlement could be allowed to stand. By it, he apparently secures a very considerable advantage. The relative situation of the parties is to be considered. He was the executor in possession of the estate, and had stood in the relation of actual guardian to the parties. They were just then, by the consent of their mother, entitled to claim a distribution of the estate, and naturally anxious to get into possession. The defendant stood in a position of advantage in treating with them. The property allotted to defendant over and above his equal distributive share, is said to be in consideration of his services in saving and preserving the estate. This must be regarded as a gratuity, and such gratuities, under such circumstances, the Court always looks upon with the greatest suspicion. In such case, as is said in Hylton v. Hylton, 2 Ves. Sen. 547, the party is supposed to say, ‘I will not deliver up the estate, unless you grant me this.’ Defendant had plausible grounds for involving them in a protracted litigation; and indeed he himself states in his answer that he would not have consented to what he terms a premature division, unless he had apparently gained some *advantage. It is true that the settlement was proposed to the defendant by the other parties. But then it is to be recollected that he had previously attempted to alarm their fears by telling them that the property was his; that their father’s estate was insolvent, and referring them to the Ordinary’s office for proof of that fact. I do not mean that he deceived them. I believe they well knew, or had good reason to believe, that he could not hold the property as his, and that they were entitled to distribution. But they might justly be alarmed at the prospect of being held out of possession for a long time. He operated not upon their ignorance, but upon their will. But it is unnecessary to investigate minutely this part of the cause, as I am satisfied complainants are barred of their claim to relief by the lapse of time, in analogy to the statute of limitations.
The complainants come to be relieved against a fraud. They come to set aside a deed which is a bar to an account to which they would be otherwise entitled. I am not aware that there is any doubt about the rule that a party coming to be relieved against a fraud, must come within *267 four years (in England six years) from the time the fraud is discovered. In Wymondsell v. The East India Company, 3 Pr. Wms. 143, it is ruled, that the bill must allege that the fraud was discovered within six years before exhibiting it. And the fact must correspond with the allegation. “ If the fraud was known and discovered six years before exhibiting the bill, this, though a fraud, would be barred by the statute of limitations. The subject is fully considered by Lord Redesdale in Hoveden v. Annesley, 2 Sch. & Lef. 607. The bar of six years is adopted in analogy to the legal bar to an action of account. In the case of Starke v. Starke, Law Jour. 503, decided by this Court, it was held that while a trust continues, the statute cannot affect it; “but if the trustee does an act which he intends, and which is understood by his cestui que trust, to be a discharge of his trust, then the statute will from that time commence to run.” To the same effect was the case of Moore v. Porcher,(a) decided in Charleston ; with the explanation that if there be fraud in the act by which the trust purports* to be finally executed, the statute will not begin to run till the fraud is discovered.
But what fraud was there in this transaction, which the complainants have discovered since the settlement ? I cannot discover a vestige of any. If there was any fraud, it was not, as I have before said, in imposing on their ignorance, but in alarming their fears and taking advantage of their situation and natural impatience to have possession of their property. They certainly knew of the purchase by Richard Farr, at the executor’s sale, and seemed to be satisfied that the defendant could not claim under that. They knew of what property the estate consisted, and bow it had been managed. They knew that the defendant had not kept, or at all events, had not returned any accounts. They knew that if he purchased property with the proceeds of the estate, a trust resulted for those entitled to the estate. They had able legal advice. I cannot lay my finger on the, minutest fact which they know now, that they did riot know then; and as said by the defendant’s counsel, I am satisfied that they were at least as well informed of their rights then, as they are now. If they were alarmed into offering such terms as the defendant was willing to accept, they had four years after being put in possession of part of their property, to institute further proceedings. Having neglected to do so, it is time there should be an end to litigation.
It was argued that the statute could not apply to the heirs of James Earr, who have been minors, so far as respects the land; and that their minority will save the rights of the rest. Eive years was at that time required to bar the right to land. There is nothing in this. This is not a suit to recover land — though the recovery of land might be an incidental consequence of it. It is to be relieved against a fraud. It is to set aside a deed; which deed, while of force, is a bar to the account which they claim. The defendant does not claim the land under the statute, but under the deed. If the deed were out of the way, the defendant, I suppose, could not hold the land by'the statute. James Earr lived four years after the execution of *the deed. It is that deed which is sought to be relieved against, and from the execution of that, the statute began to run.
The motion is dismissed and the decree affirmed.
Johnson and O’Neall, Js., concurred.

 Not reported.